**The document below is hereby signed.**

**Dated: November 29, 2012.**



_____
S. Martin Teel, Jr.
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ELLIPSAT, INC., formerly | ) | Case No. 09-00148 |
| known as ELLIPSO, INC., | ) | (Chapter 11) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JOHN H. PAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 12-10026 |
| DAVID CASTIEL, _et al._, | ) | |
| | ) | For publication in West's |
| Defendants. | ) | Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER DENYING
THE PLAN PROPONENTS' SECOND MOTION FOR SUMMARY JUDGMENT

Before the court is the second motion for summary judgment filed by the defendants. In their motion, the defendants contend that John Page is barred from seeking revocation of the order of confirmation because he has repeatedly demanded payment of his allowed claims and then accepted payment of all that he was entitled to receive under the confirmed chapter 11 Joint Plan. Page is the plaintiff in this adversary proceeding and a creditor

in the main bankruptcy case.

I

Summary judgment will be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (incorporated in Fed. R. Bankr. P. 7056). Whether a fact is material is determined by looking to the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Arrington v. U.S.*, 473 F.3d 329, 333 (D.C. Cir. 2006).

Page filed this adversary proceeding pursuant to 11 U.S.C. § 1144 alleging that the confirmation order of May 1, 2012, was procured by fraud and should be revoked by the court. Under 11 U.S.C. § 1144:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall--

>     (1) contain such provisions as are necessary to
>     protect any entity acquiring rights in good faith
>     reliance on the order of confirmation; and
>     (2) revoke the discharge of the debtor.

                                II

Page has not set forth any disputed material facts, and accordingly there is no genuine dispute as to any material fact. The undisputed facts are as follows.  On May 1, 2012, the court confirmed the Joint Plan of Reorganization.  On May 8, 2012, Page received the financial records from the chapter 11 trustee which form the basis of his claim of fraud in this adversary proceeding.  On May 16, 2012, the Joint Plan became effective, and pursuant to the Joint Plan, the escrow agent and attorney for the Joint Plan proponents, Wilson, gave Page a check in the amount of $6,000 for payment of Page's administrative expense claim allowed by this court.  On June 3, 2012, Page filed the complaint in this adversary proceeding seeking revocation of the order confirming the Joint Plan pursuant to 11 U.S.C. § 1144.  On September 25, 2012, the court allowed Page's priority unsecured claim in the amount of $10,950 and his general unsecured claim in the amount of $61,050.

Page then began to seek payment of his claims.  On October 1, 2012, he e-mailed Wilson requesting that the priority portion of his claim be paid.  Page wrote to Wilson: "According to the terms of the Joint Plan of Reorganization and the court's order confirming that plan, the priority portion ($10,950) of my claim

is immediately due." Exhibit 1 (Dkt. No. 79). Wilson replied in part, "You have created this problem by filing your adversary proceeding and cannot argue that you should have the best of all worlds, getting a distribution contingent on the implementation of the very plan whose confirmation you are attempting to have revoked." *Id.* Later that day, Page wrote back to Wilson: "You are in breach of your duties as escrow agent under a binding contract." *Id.*

Wilson refused to make the requested distribution. On October 4, 2012, Page filed a Motion to Compel Priority Claim Payment Under Joint Plan of Reorganization (Dkt. No. 1789 in Case No. 09-00148). His motion states that "the Joint Plan became a binding contract upon the Plan Proponents." At a hearing on October 10, 2012, the court denied Page's motion as premature and declined to offer guidance to Wilson as to whether he should make distributions while Page's adversary proceeding was still pending, and Wilson and the defendants never filed a motion requesting a stay, pending the outcome of this adversary proceeding, of the obligation to make payment to Page. On October 16, 2012, Page e-mailed the Plan Proponents and Wilson requesting that they make immediate payments. On October 22, 2012, Page filed a Motion to Compel Claim Payments Under Joint Plan of Reorganization (Dkt. No. 1797 in Case No. 09-00148). Wilson asked the court to deny the motion as moot because all

remaining distributions required by the Joint Plan had been mailed on October 24, 2012, and the entire $250,000 deposited into the escrow account had now been distributed.  On October 31, 2012, Page cashed his payment from the escrow account in the amount of $12,778.71.

III

The defendants assert that the confirmed Joint Plan of reorganization is a contract subject to the general rules governing the interpretation of contracts.  They argue that Page has ratified and accepted the Joint Plan and therefore may not seek to void the contract under 11 U.S.C. § 1144.  They further allege that because Page has accepted the benefits under the Joint Plan, he is estopped from rejecting the burdens of the contract and seeking rescission of the contract.  Finally, the defendants allege that Page's actions in obtaining payment under the Joint Plan constitute a waiver of his right to pursue this adversary proceeding to revoke the plan.

Page devotes most of his *Opposition* to arguing that the Joint Plan is not a contract between the Plan Proponents and the creditors, including himself, but rather that the Joint Plan is a binding contract between the Plan Proponents and the estate of the debtor.

Contrary to the defendants' argument, there is no limitation in 11 U.S.C. § 1144 that an action to revoke an order of

confirmation may be brought only by a party who has not received a distribution under the confirmed plan.  Instead, 11 U.S.C. § 1144 states: "On request of *a party in interest* at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud" (emphasis added).  The argument advanced by the defendants grafts onto the statutory provision a requirement that is not found in its text.  Therefore, their argument fails.  Imposing non-acceptance of plan payments as a requirement for revocation of an order confirming a plan would impose a requirement on persons seeking to revoke an order of confirmation that is not found in 11 U.S.C. § 1144.  At issue is the revocation of an order, not the rescinding of a contract.

                                    IV

The defendants point to two cases that purport to support their argument that Page's acceptance of benefits pursuant to a court order precludes him from seeking revocation of that order.  The first is *Thoubboron v. Ford Motor Company* which states that "a party with full knowledge of the facts, which accepts the benefits of a transaction, contract, statute, regulation, or order may not subsequently take an inconsistent position to avoid the corresponding obligations or effects."  809 A.2d 1204, 1212 (D.C. 2002).  The court set forth the following as elements

required to establish estoppel: "'[t]he party seeking to invoke the estoppel ... must have been an adverse party in the prior proceeding, must have acted in reliance upon his opponent's prior position, and must now face injury if a court were to permit his opponent to change positions.'" *Thoubboron*, 809 A.2d at 1213 (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C. Cir. 1980)). While these elements are similar to those required for judicial estoppel, the court specifically declined to address whether judicial estoppel applied. *Thoubboron*, 809 A.2d at 1212 n.9; *see also Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010) ("[W]e have explained that [c]ourts may invoke judicial estoppel [w]here a party assumes a certain position in a legal proceeding, ... succeeds in maintaining that position, ... [and then,] simply because his interests have changed, assume[s] a contrary position.") (quoting *Comcast Corp. v. F.C.C.*, 600 F.3d 642, 647 (D.C. Cir. 2010)) (internal quotation marks omitted). Even though the court in *Thoubboron* did not apply judicial estoppel, it is evident that the court was addressing estoppel in the context of a party maintaining inconsistent positions in successive legal proceedings.

Here, there was no prior proceeding in which Page asserted a position inconsistent with his current position. Therefore, the elements of the estoppel doctrine in *Thoubboron* are not met in this case. More importantly, Page is not changing positions on

7

an issue. Rather, he is asserting that the order confirming the Joint Plan was procured by fraud, but, nevertheless he wants to be paid his share of the plan distributions in the event that the order is not revoked. That is not a change of positions.

V

The defendants also cite *Union Provision & Distributing Corporation* v. *Thomas J. Fisher & Co., Inc.* for the rule that "[o]ne can not accept or secure a benefit under a judgment and then repudiate the judgment and prosecute an appeal therefrom." 49 A.2d 85, 87 (D.C. 1946). Though not cited by the defendants in this adversary proceeding, this "acceptance of benefits" doctrine has also been applied in a bankruptcy case to preclude creditors who had received payments under the plan from challenging the validity of the order approving the plan. *See Oriole Phonograph Co. v. Kansas City Fabric Prods. Co.*, 34 F.2d 400, 401 (8th Cir. 1929).

Many years after *Union Provision* and *Oriole Phonograph Co.* were decided, the Supreme Court called into question the validity of the traditional acceptance of benefits doctrine in *United States v. Hougham,* 364 U.S. 310, 81 S. Ct. 13, 5 L. Ed. 2d 8 (1960). In that case, the Supreme Court stated: "It is a generally accepted rule of law that where a judgment is appealed on the ground that the damages awarded are inadequate, acceptance of payment of the amount of the unsatisfactory judgment does not,

8

standing alone, amount to an accord and satisfaction of the entire claim." *Hougham,* 364 U.S. at 312, 81 S. Ct. at 16. Instead, the Supreme Court looked to the parties' conduct to determine whether they intended the payment and acceptance of the judgment as a final settlement of their claims. *Hougham,* 364 U.S. at 312-13, 81 S. Ct. at 16. ("[S]ince the transfer of the notes occurred prior to the decision of the Court of Appeals, it is clear that neither of the parties regarded that transfer as an accord and satisfaction of the entire controversy for *both* pursued their appeals in that court."). The Fourth Circuit adopted a similar approach:

> When a payment of a judgment is made and accepted under such circumstances as to indicate an intention to finally compromise and settle a disputed claim, an appeal may be foreclosed, but, under such circumstances, it is the mutual manifestation of an intention to bring the litigation to a definite conclusion upon a basis acceptable to all parties which bars a subsequent appeal, not the bare fact of payment of the judgment.

*Gadsden v. Fripp*, 330 F.2d 545, 548 (4th Cir. 1964).

A state court's rulings regarding the acceptance of benefits doctrine, such as the *Union Provision* ruling, is not binding on this court in addressing the effect of the acceptance of payments under a confirmed plan. The confirmation order at issue was entered under the Bankruptcy Code (11 U.S.C.), not state law, by a federal court with exclusive jurisdiction over the bankruptcy case, and revocation under 11 U.S.C. § 1144 is a federal remedy vested solely in a federal court. Accordingly, federal common

9

law, not state law, determines whether the doctrine bars Page's action to revoke the order confirming the Joint Plan.  *See Lanier v. Old Republic Ins. Co.*, 936 F. Supp. 839, 855 (M.D. Ala. 1996) (citing *Crawford v. Andrew Sys., Inc.*, 39 F.3d 1151, 1153 (11th Cir. 1994)).

The Court of Appeals for the District of Columbia Circuit examined the acceptance of benefits doctrine in *Price v. Franklin Investment Company, Inc.*, 574 F.2d 594, 597 (D.C. Cir. 1978), a case decided after *Hougham*.  Even though the court of appeals reached the same result in that case as it would have reached had it followed *Hougham* (namely, that the appeal was not barred), the case does not mention *Hougham*.  The appellant in *Price* did not argue that--and it was unnecessary in that case to decide whether--*Hougham* permitted the appeal to remain pending if enforcement of the judgment was inconsistent with challenging the judgment:[1] the appellant did not appeal the portion of the judgment that was satisfied, and instead was challenging a separable and divisible controversy, such that even under pre-

---

[1] The appellant in *Price* argued that its collection of the judgment award could not be deemed a waiver because the appellant was not appealing the portion of the judgment that was satisfied. *Reply Brief for Plaintiff-Appellant* at 4-7.

10

*Hougham* law the appeal was not barred. *Price*, 574 F.2d at 597.[2] Accordingly, *Price* does not answer the question at issue here, namely whether *Hougham* permits pursuit of an appeal even when the appellant *has* accepted benefits inconsistent with the relief it pursues on appeal.[3]

Because the D.C. Circuit did not address *Hougham* when it applied the acceptance of benefits doctrine in *Price*, and because the result would have been the same under *Hougham*, the pre-*Hougham* rule enunciated in *Price* is *dicta* and is therefore not binding on this court. *See In re Swanson*, 289 B.R. 372, 374

---

[2] In *Price*, the court first sets forth that "[i]t is a settled rule of law that a litigant may not accept all or a substantial part of the benefit of a judgment and subsequently challenge the unfavorable aspects of that judgment on appeal," but recognizes an exception to this traditional rule when the judgment contains "separable or divisible controversies." *Price*, 574 F.2d at 597. In that instance, "'the appealing party may accept the benefit of the separable or divisible feature in his favor and challenge the feature adverse to him . . ..'" *Id.* (quoting *Luther v. United States*, 225 F.2d 495, 497 (10th Cir. 1954)).

[3] The Court of Appeals for the District of Columbia Circuit also discussed the acceptance of benefits rule set forth in *Price* in *So v. Suchanek*, 670 F.3d 1304, 1309 (D.C. Cir. 2012). However, *So* is not directly on point here because *So* dealt with whether the appellant was required to post a bond to stay execution of a judgment, not whether acceptance of payment of the judgment barred the appeal. If anything, *So* may support the proposition that when an appellant takes an appeal seeking a remedy inconsistent with the judgment on appeal (*e.g.*, specific enforcement instead of the monetary award under the judgment), the appellee ought to be entitled to a stay of the judgment's enforcement. The defendants here never filed a motion for a stay of the obligation to make payment to Page.

(Bankr. C.D. Ill. 2003) ("Lower courts are not bound to follow a higher court's dictum."). The reasoning in *Hougham* is sound, and I find that its intent-based approach is the preferable approach.

Most of the courts of appeals that have addressed the issue apply the *Hougham* rule expansively. *See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 518 F.3d 1302, 1307 (11th Cir. 2008) ("As the *Hougham* decision teaches, the fact that the plaintiff in our case sought and obtained payment of the initial judgment he was challenging as inadequate is not enough by itself to render the appeal moot. . . . Instead, we look to the most important factor, which is the parties' objective manifestations of intent."); *Collins v. Montgomery Cnty. Bd. of Prison Inspectors*, 176 F.3d 679, 682 n.4 (3d Cir. 1999) (following *Hougham*); *Klein v. Grynberg*, 44 F.3d 1497, 1502 (10th Cir. 1995) ("In order to act as a waiver of appeal, a party's acceptance must be voluntary and intended as satisfaction of the judgment."); *McGowan v. King, Inc.*, 616 F.2d 745, 747 (5th Cir. 1980) ("[The appellant] is foreclosed from taking this appeal only if the parties mutually intended a final settlement of all the claims in dispute and a termination of the litigation."); *Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 752 (9th Cir. 1969) (citing *Gadsden*); *see also* 13B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3533.2.2 ("Acceptance by the plaintiff does not moot an appeal seeking to recover more.

. . . Occasionally a court may rule that a plaintiff moots an appeal by accepting the benefits of the judgment, but that is justified only if the circumstances show an intent to settle.") (footnotes omitted).  *But see Tech Hills II Assocs.v. Phoenix Home Life Mut. Ins. Co.*, 5 F.3d 963, 969-70 (6th Cir. 1993) (acceptance of benefits doctrine barred appeal because the appeal sought pursuit of a remedy inconsistent with the judgment).

To the extent that an appellant seeks a remedy that could lead to a result that is inconsistent with the judgment, that may justify staying enforcement of the judgment pending appeal.  *See BASF Corp. v. Old World Trading Co.*, 979 F.2d 615, 616 (7th Cir. 1992); *So v. Suchanek*, 670 F.3d at 1309.  Under *Hougham*, however, it is not a ground justifying dismissing the appeal.  The appellee can protect itself from inconsistent results by obtaining a stay pending appeal.  Here, the defendants failed to seek a stay, pending the outcome of this adversary proceeding, of Page's enforcing the obligation to make payment to him under the order of confirmation.

Accordingly, Page's acceptance of the plan payments, standing alone, does not preclude him from pursuing this adversary proceeding and, additionally, there are no factual circumstances which "indicate an intention to finally compromise and settle [the] disputed claim."  *Gadsden v. Fripp*, 330 F.2d at 548.

13

VI

The defendants' argument rests on the theory that the Joint Plan should be treated as a contract between the reorganized debtor and the creditors for all purposes.  However, in general, courts have applied contract principles to confirmed plans in the context of addressing how to interpret the provisions of the plan, not in the context of an affirmative defense such as estoppel or waiver raised with respect to revocation of the order confirming the plan.  *See In re Shenango Grp. Inc.*, 501 F.3d 338, 344 (3d Cir. 2007) ("In construing a confirmed plan of reorganization, we apply contract principles."); *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004) ("A Chapter 11 bankruptcy plan is essentially a contract between the debtor and his creditors, and must be interpreted according to the rules governing the interpretation of contracts."); *Official Comm. Of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 676 (6th Cir. 2006) ("In interpreting a confirmed plan, courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors.").

This court has located only one post-*Hougham* case, *Official Equity Security Holders' Committee v. Wilson Foods Corporation (In re Wilson Foods Corp.)*, 45 B.R. 776 (Bankr. W.D. Okla. 1985), in which a court entertained the affirmative defense of estoppel

to revocation of an order confirming a plan.  In that case, the defendants in an action to revoke an order confirming a plan argued that the creditors were estopped from seeking revocation because they had received partial payments under the plan.  The court rejected this argument but added in dicta that "[t]he estoppel theory as to the creditor-movants would likely hold if their class had been paid in full." *Id.* at 779-780.  Here, the Joint Plan does not provide for Page's nonpriority unsecured claim to be paid in full, and therefore, under the reasoning of the one case to have addressed the issue, *In re Wilson Foods Corp.*, Page is not estopped from seeking revocation of the confirmation order.[4]

## VII

Page neglected to seek a stay of the distribution of plan payments pending the disposition of this adversary proceeding. Because all distributions under the Joint Plan have been made (*see* Exhibit to Dkt. No. 1799 in Case No. 09-00148), there may be an issue as to whether revocation of the confirmation order at this point is impracticable or "equitably moot".  *See* 8 COLLIER ON BANKRUPTCY ¶¶ 1144.03[4], 1144.06[1][a] (16th ed.); *see also Varde Inv. Partners, L.P. v. Comair, Inc. (In re Delta Air Lines, Inc.)*, 386 B.R. 518, 537 (Bankr. S.D.N.Y. 2008) ("The primary

---

[4] Clearly, however, if Page is successful in revoking the order of confirmation, he will be required to disgorge any distribution he has received under the Joint Plan.

consideration in determining mootness is whether the [chapter 11] plan has been substantially consummated."). I will direct Page to first address the issue of equitable mootness at the upcoming trial.

### VIII

For all of these reasons, it is

ORDERED that the defendants' *Second Motion for Summary Judgment* is denied. It is further

ORDERED that equitable mootness is the first issue to be addressed at the December 5, 2012 trial in this adversary proceeding.

[Signed and Dated Above]

Copies to: John Page; all counsel of record.